# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **PAUL GROVER MATT, III**, | Case No. **12-61456-13** |
| Debtor. | |
| **LARRY ZEILER** and **JO ELLEN ZEILER**, | |
| Plaintiffs. | |
| -vs- | Adv No. **12-00064** |
| **PAUL GROVER MATT, III**, | |
| Defendant. | |

## MEMORANDUM of DECISION

At Butte in said District this 22nd day of May, 2013.

In this Adversary Proceeding, after due notice, trial was held April 23, 2013, in Billings on the Plaintiffs' complaint requesting a declaratory judgment that a buy-sell agreement between Plaintiffs and Defendant is not an executory contract and that the Court compel Defendant Paul Grover Matt, III ("Matt") to close the buy-sell agreement and transfer certain real property to Plaintiffs. Plaintiffs were represented at trial by William M. Kebe and Marie Kagie-Shutey of Butte, Montana. Matt was represented at trial by Mark Hilario of Billings,

1

Montana.  Plaintiff Jo Ellen Zeiler, Shelly Noe, and Matt testified.  Plaintiffs' Exhibits 1 through 14, and Matt's Exhibits A through O were admitted into evidence without objection.

FACTS

On April 16, 2013, at docket entry no. 10, the parties filed a Stipulation for Agreed Facts and Exhibits.  Pursuant to the Stipulation,

1. On June 29, 2012, Defendant Paul Matt offered, by public auction, the sale of two parcels of real property located in Stillwater County, Montana.  *See* Exhibit "A."

2. Pursuant to Exhibit "A," Tract No. 1 (legally described as Section 18, Township 4 South, Range 17 East, Lot 3-B Midnight Ranch tract, COS 326449), was offered for sale "with no minimum reserve bid." The sale of Tract No. 2 was subject to approval of the final bid by Matt.

3. Plaintiffs Larry and JoEllen Zeiler attended the June 29, 2012, auction and were the successful bidders on Tract No. 1. The Zeilers bid a total purchase price of One Hundred Seventy Thousand Dollars ($170,000.00).

4. Prior to the auction the Zeilers owned (and still own) property adjacent to Tract No. 1 and were familiar with the property.

5. Matt was present for the entirety of the auction.  Immediately following the auction, the Zeilers (as buyers) signed a Buy-Sell Agreement which set forth the terms of the sale.  Matt (as seller) signed the Buy-Sell at a later time that same date.  *See* Exhibit "C."

6. Pursuant to the Buy-Sell Agreement, the Zeilers were responsible to pay Thirty-Four Thousand Dollars ($34,000.00) as a non-refundable down payment.  The Zeilers had to pay the remainder of the purchase price ($136,000.00) in cash at or before closing. The Buy-Sell

2

Agreement required a closing date on or before July 29, 2012.

7. Pursuant to the Buy-Sell Agreement, the Zeilers paid $34,000.00 to Stillwater Abstract and Title (the company appointed to act as the closing agent), which funds were deposited by the Closing Agent.

8. The Closing Agent scheduled closing for July 18, 2012.  *See* Exhibit "F."

9. Pursuant to the Zeilers' request to close one day early, they appeared at the Closing Agent's office on July 17, 2012, at which time they signed the documents necessary to close and deposited the remainder of the purchase price and their share of the closing costs with the Closing Agent.  *See* Exhibit "G."

10. The Zeilers executed a check in the amount $135,751.19 pursuant to the Purchaser's Statement for the full purchase price of $170,000.00 plus Zeilers' portion of the costs to close with adjustments for 2012 real property taxes.

11. Subsequent to July 26, 2012, Matt did not contact Stillwater to facilitate closing.

12. The Zeilers filed a Notice of the Buy-Sell Agreement with the Clerk and Recorder of Stillwater County on August 10, 2012.  *See* Exhibit "I."

13. On September 7, 2012, Matt filed a Chapter 13 Bankruptcy Case before this Court.

14. In his bankruptcy schedules, Matt lists the real property that is the subject of this adversary action as property that is subject to the bankruptcy estate.  On Schedule A, Matt values the instant property at $350,000.00 with a secured debt of $135,367.21.

15. In the bankruptcy schedules, Matt sets forth that his contract with the Zeilers is executory in nature.

3

In addition to the above stipulated facts, the evidence presented at trial shows that in late 2010, Matt was offered the opportunity to purchase a .32 acre triangular piece of property that represented the corner of a 360 acre parcel of property. The .32 acre triangular piece of property was separated from the remainder of the 360 parcel by the Stillwater River and angled into a parcel of property identified on Exhibit O as Midnight Ranch Tract 3-B amended, as described on Certificate of Survey No. 347233. The owner of the .32 acre triangular piece of property told Matt that Plaintiffs, who own another parcel of property adjacent to Tract 3-B, were going to purchase the .32 acres. Matt, who owned Tract 3-B and had an easement over the .32 acres for access to the Stillwater River, told the owner that he would purchase the triangle for a reasonable price. Matt and the owner agreed on a purchase price of $50,000.00. Although Matt did not have the money to purchase the .32 acres, he scraped together funds for the down payment. In March of 2011, when the time came to close the sale, Matt borrowed $50,000.00 from Cindy Smith and $50,000.00 from Richard Tegtmeier. Matt gave Cindy Smith and Richard Tegtmeier promissory notes. In the event of non-payment, Matt also gave Cindy Smith and Richard Tegtmeier quit claims deeds for Tracts 3-B and 3-C, which deeds were never recorded.

The .32 acre piece of land is now part of Tract 3-B. Tract 3-B is approximately 3.62 acres with 322 feet of Stillwater River frontage. Tract 3-C borders Tract 3-B on the opposite side of the river frontage. Tracts 3-C and 3-D are divided by a 60 foot access road easement. Matt owns Tracts 3-B, 3-C, and 3-D.

Prior to purchasing the .32 acre triangular piece of land, Matt, in 2010, listed Tract 3-B, with the easement over the .32 acres, for sale at a price of $325,000.00. Matt took 3-B off the

4

market after purchasing the .32 acres.  In late 2011, Matt listed Tracts 3-B, 3-C, and 3-D for sale together for a total price of $750,000.00.  None of the parcels sold.  In addition, at that time, Matt had no funds, his home was in foreclosure, and he was behind on his debts.  Because of his financial condition, Matt decided that an auction might be a good way to sell Tracts 3-B and 3-C, and generate some cash.  Matt did some research and concluded he could get $250,000 to $300,000 for Tract 3-B.  Based upon his research and after talking to auctioneer Rick Young, Matt decided not to set a minimum or reserve bid on Tract 3-B, but reserved the right to accept or reject any bid on Tract 3-C.

Shelly Noe, an owner of Stillwater Abstract and Title Company, testified that Rick Young contacted her and requested an open commitment on Tracts 3-B and 3-C.  Per the open commitment, as of May 25, 2012, the only lien against Tract 3-B was held by Bank of Red Lodge in the amount of $122,427.00.

After advertising for a "Real Estate Auction|Friday - Jun 29, 2012 - 6:30PM," Rick Young conducted an auction of Tracts 3-B and 3-C on June 29, 2013.  Plaintiffs attended the auction and made the successful bid of $170,000.00 for Tract 3-B.  Rick Young unilaterally called the auction of Tract 3-C off after receiving a bid of only $20,000 or $40,000.

At approximately 7:30 p.m. on June 29, 2012, Matt signed the Buy-Sell Agreement at issue in this proceeding.  Plaintiffs signed the Buy-Sell Agreement on June 3, 2012.  In the Buy-Sell Agreement, Matt and the Plaintiffs identify the purchase price of the property as $170,000.00, comprised of a $34,000.00 non refundable down payment to be applied at closing and $136,000.00 as an additional cash payment, payable on or before closing.  The Buy-Sell agreement contains no contingencies and provides that closing would be on or before July 29,

5

2012.  The Buy-Sell Agreement also provides that "[a]ll mortgages, judgments, and liens shall be paid or satisfied by the Seller at or prior to closing, unless otherwise provided herein.  Seller agrees that no additional encumbrances, restrictions, easements, conservation easements, or other adverse title conditions will be placed against the title to the Property subsequent to the effective date of the preliminary title commitment approved by the Buyer, unless otherwise provided herein."  The Buy-Sell Agreement was not contingent on Plaintiffs security financing or performing an inspection of the property.

At Plaintiffs' request, closing was scheduled for July 18, 2012.  In preparation for the closing, Stillwater Abstract & Title Co. prepared a final title commitment.  As of June 15, 2012, the title commitment revealed that Tract 3-B was, in addition to Bank of Red Lodge's lien, encumbered by a Montana Trust Indenture in favor of Cindy Smith dated June 21, 2012, and recorded June 27, 2012, which secured an indebtedness in the principal sum of $50,000.00, and a Montana Trust Indenture in favor of Richard Tegtmeier dated June 21, 2012, and recorded June 27, 2012, which secured an indebtedness in the principal sum of $50,000.00.[1]

On July 16, 2012, Matt sent Stillwater Abstract & Title Co. a letter, via facsimile transmission, indicating he would not be available for closing on July 18, 2012, because he was required to be out of town on business.  Matt indicated in his letter of July 16, 2013, that because July 29, 2012, was a Sunday, closing should be scheduled for the week of July 30th, and that either Matt or his attorney would contact Stillwater Abstract & Title Co. for "further scheduling information."

---

[1]  The Trust Indentures recorded June 27, 2012, stem from the loans Cindy Smith and Richard Tegtmeier made to Matt in March of 2011.

Plaintiffs appeared at the office of Stillwater Abstract & Title Co., Inc. on July 17, 2012. Shelly Noe advised Plaintiffs that Matt would not be available to close on July 18, 2012, as scheduled, but Plaintiffs nevertheless tendered certified funds in the amount of $135,751.19 for the property and signed all documents necessary to complete Plaintiffs' portion of the closing. Shelly Noe testified that buyers and sellers close on different dates all the time, and thus, it was not unusual that Plaintiffs completed their portion of the closing on July 17, 2012.

At the request of Plaintiffs, Shelly Noe deposited Plaintiffs' certified funds of $135,751.19 into Stillwater Abstract & Title Co.'s trust account on October 9, 2012, where the funds remain today. Shelly Noe testified that if the transaction is closed, Plaintiffs will receive a slight refund due to a proration of property taxes.

On July 26, 2012, Matt faxed another letter to Stillwater Abstract & Title Co. advising that he would have his attorney, "Craig Martinson of Patten, Peterman, Bekkedahl & Green, PLLC contact you on Monday." Matt did not ultimately sign the closing papers, prompting the Plaintiffs to record a Notice of Buy-Sell Agreement in Stillwater County on August 10, 2012. Matt filed a voluntary Chapter 13 bankruptcy petition on September 7, 2012, indicating his intent to reject his Buy-Sell agreement with the Plaintiffs.

In response to Matt's bankruptcy petition and proposed Chapter 13 plans, Plaintiffs filed a complaint for declaratory relief and for recovery of property seeking a determination that the Buy-Sell agreement is not an executory contract and declaring that Matt has an obligation to close the Buy-Sell Agreement and transfer Tract 3-B to Plaintiffs. In their complaint, Plaintiffs also seek a ruling that the Trust Indentures filed by Cindy Smith and Richard Tegtmeier on June 27, 2012, are preferential transfers under 11 U.S.C. § 547 and fraudulent transfers under 11

7

U.S.C. § 548.  While Cindy Smith and Richard Tegtmeier are not parties to the Adversary

Proceeding, Plaintiffs abandoned their preferential and fraudulent transfer claims at the time of

trial.

APPLICABLE LAW

This Adversary Proceeding turns on whether the Buy-Sell Agreement between Matt and

the Plaintiffs is an executory contract.  If the Buy-Sell Agreement is executory, Matt seeks to

reject it under 11 U.S.C. § 365.  If the Buy-Sell Agreement is not executory, Plaintiffs seek to

compel Matt's specific performance under the Buy-Sell Agreement, which is one of the

"Buyer's Remedies" under the Buy-Sell Agreement.

On the topic of executory contracts, the United States Court of Appeals for the Ninth

Circuit, in a case stemming from this District, explained:

> Whether a contract is executory within the meaning of the Bankruptcy Code is a
> question of federal law.  *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885,
> 888 (9th Cir.1982).  Although the Code does not define "executory contract,"
> courts have generally defined such a contract as one on which performance is due
> to some extent on both sides.  *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.
> 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984).  Also, in executory contracts
> the obligations of both parties are so far unperformed that the failure of either
> party to complete performance would constitute a material breach and thus excuse
> the performance of the other.  *Pacific Express, Inc. v. Teknekron Infoswitch Corp.
> (In re Pacific Exp., Inc.)*, 780 F.2d 1482, 1487 (9th Cir.1986).  The question of the
> legal consequence of one party's failure to perform its remaining obligations under
> a contract and whether one of the parties' failure to perform its remaining
> obligations would give rise to a material breach is an issue of state contract law.
> *Hall v. Perry ( In re Cochise College Park, Inc.),* 703 F.2d 1339, 1348 n. 4 (9th
> Cir.1983).

*In re Wegner*, 839 F.2d 533, 536 (9th Cir. 1988).

Matt argues "[n]either party completed the obligations under the Buy-Sell[,]" and thus,

the Buy-Sell Agreement is an executory contract.  Citing to *In re International Fibercom, Inc.*,

8

503 F.3d 933, 941 (9th Cir. 2007), Matt argues that a "contract is executory, and therefore assumable under § 365, only if one party's failure to perform its obligation would excuse the other party's performance." Applying such reasoning to this case, Matt argues that "Zeiler's refusal to pay . . . excused [Matt's] obligation" to convey title. The problem with such argument is that Plaintiffs did not refuse to pay. Rather, Plaintiffs tendered payment in full, in the form of a nonrefundable down payment of $34,000.00 and certified funds in the amount of $135,751.19. As of July 17, 2012, when Plaintiffs tendered the payment of $135,751.19, Plaintiffs had no further obligations to perform under the Buy-Sell Agreement.

Similarly, Matt argues this case is factually indistinguishable from *In re Alexander*, 670 F.2d 885, 888 (9th Cir.1982), and that the "unfulfilled material obligations of both parties to pay money and convey title, made the contract executory[.]" The Court disagrees with Matt's narrow interpretation of *Alexander*. In *Alexander*, the buyers, "[o]n the date of closing, . . . deposited additional funds necessary to close, and had a loan commitment[.]" *Alexander*, 670 F.2d at 886. The Court in *Alexander* noted that the buyers had "tendered full performance." *Id.* The Court in *Alexander* then held:

> The contract did not cease to be executory when there was a tender of performance. Performance or the rendering of performance, not just the tender of performance, is required.

*Id.* at 887. Ten years later, the Ninth Circuit Court of Appeals explained further:

> [An executory contract is] one on which performance is due to some extent on both sides.... [I]n executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.

* * *

9

> Next we determine whether, on the date the petition was filed, *see Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir.1984), either party's failure to perform its remaining obligations would give rise to a material breach and excuse performance. *In re Wegner*, 839 F.2d at 536. If either party has "substantially performed" its side of the bargain, such that the party's failure to perform further would not excuse performance by the other party, then the contract is not executory. *In re Munple*, 868 F.2d at 1130 (citation omitted).

*In re Texscan Corp.*, 976 F.2d 1269, 1272 (9th Cir. 1992).

In the case *sub judice*, the Plaintiffs did more than tender performance, they fully performed under the Buy-Sell Agreement when they signed all necessary documents and presented the title company with bankable funds for the full purchase price on July 17, 2013. The Buy-Sell Agreement in this case is not an executory contract that Matt can reject.

As for the relief requested by the Plaintiff, in Montana,

> Specific performance may be compelled pursuant to § 27-1-411(4), MCA, when "it has been expressly agreed in writing, between the parties to the contract, that specific performance thereof may be required by either party or that damages shall not be considered adequate relief."

*Peuse v. Malkuch* (1996), 275 Mont. 221, 225-26, 911 P.2d 1153.  The Buy-Sell Agreement signed by Matt on June 29, 2012, expressly identifies specific performance as one of the Plaintiffs' remedies in the event Matt accepted the offer, which he did, and in the event Matt refused to consummate the sale within the time period provided in the Buy-Sell Agreement, which he also did.

For the reasons discussed above,

IT IS ORDERED that the Court will enter a separate judgment in favor of the Plaintiffs, Larry and Jo Ellen Zeiler and against Defendant Matt Grover Matt, III; and Defendant Matt Grover Matt, III shall, within fourteen (14) days, take the steps necessary to close the Buy-Sell

Agreement with the Plaintiffs and transfer Section 18, Township 4 South, Range 17 East, Lot 3-

B Midnight Ranch tract, COS 326449 to the Plaintiffs.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

11